HENDERSON, Administrator Office of Price Administration, v. GANDY et al.

No. 2708.

District Court, E. D. Pennsylvania.

Sept. 28, 1942.

David Ginsburg, Gen. Counsel, of Washington, D. C., and John E. Mulder, Chief Atty. and Sylvan M. Cohen, Atty., both of Philadelphia, Pa., for plaintiff.

Reilly & Pearce and Thomas J. Reilly, all of Upper Darby, Pa., for defendants.

GANEY, District Judge.

This is a bill in equity brought by the plaintiff to enjoin the defendants from violating certain sections of the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix § 901 et seq., an act passed by Congress to further the national defense and security, by checking speculative and excessive price rises, price dislocations, inflationary tendencies, etc. more particularly Section 4(a) and (b) thereof, as well as violation of the Maximum Rent Regulation Number 28, passed in pursuance of said Emergency Price Control Act, and more particularly Sections 2, 3, 4(a), 4(b), 4(c), 5(b), 6(a), 6(b), and 6(d) thereof. Under Section 205(a) of the said Emergency Price Control Act, 50 U.S.C.A.Appendix § 925(a), the Administrator thereof has authority to make application to any appropriate court for an order enjoining acts or practices violative thereof.

The testimony shows that the tenants, Mr. and Mrs. Cornelius DeJong, first negotiated for the premises in question, 8215 West Chester Pike, Upper Darby, Pennsylvania, on the 29th day of May, when Mr. DeJong saw a sign in the window stating that there was an apartment for rent. The apartment was formerly a store being situate on the first floor of the premises with large store windows on two sides, and is divided into three rooms and a bath and covers in its entirety an area twenty feet by twenty feet. The partitions separating the rooms are wooden one-half way up, the other half being glass, the only ventilation being from the transom on the large store front windows. Mr. DeJong looked at the apartment and said he would return in a day or two and bring his wife and in the discussion the rental was fixed at thirty-five dollars ($35.00) per month. He came back on approximately the 6th day of June with Mrs. DeJong and after some conversation during which it was disclosed that the DeJongs had children, the rental was fixed at twelve dollars ($12.00) per week, to which the DeJongs assented. There was further testimony that the tenancy was to exist for four weeks and if the DeJongs, who were merely renting temporarily, had not secured a place by that time, the rental was to be fixed at fourteen dol-

382

lars ($14.00) per week, although this is denied on the part of the DeJongs. The DeJongs then moved into the apartment at a rental of twelve dollars ($12.00) per week, including two rooms, a kitchen and bath, and paid said rental until the 3rd day of July when the DeJongs tendered one of the defendants, Mrs. Gandy, fifteen dollars ($15.00) in payment for the week's rental. Mrs. Gandy returned but one dollar ($1.00) and upon objection being raised by Mrs. DeJong, she was advised that the rental was then fourteen dollars ($14.00) per week, which Mrs. Gandy insisted was a fact from the conversation which had occurred when the rental was fixed at twelve dollars ($12.00) per week. On the 7th day of July the DeJongs made complaint to the Office of the Price Administrator and they instructed Mrs. DeJong to make tender of the sum of eight and 75/100 Dollars ($8.75) to the defendants, which they did until July 17, 1942. However, the money orders given therefor were never cashed by the defendants and after that date no further rentals were offered. Upon being given notice to vacate by the defendants on July 29th, and the tenants not so doing, the electricity was turned off by the defendants, leaving the family without light or proper refrigeration. A temporary restraining order was issued by the court, coupled with a mandatory injunction to the defendants to provide the same amount of services which had existed at the time of the leasing, which was immediately done thereafter and the matter then came before the court on final hearing. The court makes the following:

### Findings of Fact.

(1) That pursuant to negotiations started on the 29th day of May, on the 6th day of June, 1942, a verbal arrangement was entered into between the DeJongs and the defendants for the rental of the first floor apartment at 8215 West Chester Pike, Upper Darby, Delaware County, Pennsylvania, at a rental of twelve dollars ($12.00) per week, including electric service, which apartment was owned by the defendants.

(2) That the apartment consists of two rooms and a kitchen and bath, embracing a floor space of twenty feet by twenty feet, which was occupied by Mr. & Mrs. DeJong, four children, two boys and two girls, a cat and a dog.

(3) That the premises in question were occupied sometime between January 1, 1942, and May 31, 1942, at a weekly rental of eight and 75/100 Dollars ($8.75), which included electric service, although the occupant, a Mr. Harding, only actually used one room and the bath, the leasing thereof however, embracing the same apartment presently occupied by the DeJongs.

(4) That on or about the 3rd day of July, 1942 the defendants demanded and received of the DeJongs the sum of fourteen dollars ($14.00) per week, for rent due in advance.

(5) That a few days later, on the 7th day of July, the DeJongs upon being instructed by the Office of Price Administration, tendered the defendants the sum of eight and 75/100 Dollars ($8.75) per week as rent down until the 17th day of July.

(6) That on July 9, 1942 the plaintiff by John E. Mulder, Attorney, advised the defendants that the maximum rental they would be allowed to charge would be twelve dollars ($12.00) per week.

(7) That following a letter written by the defendants on July 29, 1942 to the DeJongs, asking them to vacate the premises, and they not having done so, the defendants on August 5, 1942, disconnected the electric service and refused to restore the same until ordered to do so by the court.

(8) That the maximum rental to be charged by the defendants, pursuant to the Emergency Price Control Act, and the regulations incident thereto, is eight and 75/100 dollars ($8.75) per week.

(9) That the habitation by six persons, a husband and wife, and four children, two boys one fourteen and one six years of age, and two girls, one ten and one five years of age, together with a cat and a dog, all within a space of twenty feet by twenty feet—a store room with large plate glass windows on both sides of the apartment—divided into four rooms, two of which are a kitchen and a bath, is a nuisance and offends against the public health, safety and good morals.

### Conclusions of Law.

(1) That the occupancy of the apartment in question, as has been indicated, covering a total space or area of twenty feet by twenty feet, constitutes a nuisance, is an unsafe and unsanitary condition, and the same should be abated.

(2) The plaintiff's prayer for an injunction is denied, and the defendants are directed to continue the leasing of the premises aforesaid with existing services to the tenants, Mr. & Mrs. DeJong and fam-

ily, at a rental of eight and 75/100 dollars ($8.75) per week, unless increased by the plaintiff for a maximum period of two weeks or less in the event other living quarters are sooner procured by the De-Jongs.

(3) The costs of this proceeding shall be divided equally between the parties hereto.

### Opinion.

■ There can be little doubt that the apartment here in question was rented to one Harding, a single individual, for a period of time between January 1, 1942, and May 1, 1942 at a weekly rental of eight and 75/100 dollars ($8.75). Mr. Gandy, one of the defendants, so testified and Willard T. Smith, an Investigator for the plaintiff, also testified that Mrs. Gandy, another of the defendants, so told him, which assertion' was never denied by Mrs. Gandy. Counsel for the defendants, however, has very persuasively argued to the court, that while this was the rental fixed during this period, for one individual occupying it, it was not a fair criterion by which to gauge the rental for a family of six, and therefore the agreement between the parties, of twelve dollars ($12.00) per week, should be fixed as the maximum rental for the apartment. However, with this contention I do not agree. I feel the basic rental for the apartment has been fixed by the defendants at eight and 75/100 Dollars ($8.75) per week by reason of the leasing of the exact premises during the dates hereinabove referred to, and while more electricity, water and gas are certainly required for a family of six, than for a single individual, the defendants should proceed in conformity with Section 5(a) (3), Rent Regulation No. 28 of the Emergency Price Control Act whereunder provision is made, whereby a landlord may file a petition for an adjustment, to increase the maximum rent allowable, where there has been a substantial increase in the services furnished since the occupancy which determined the maximum rental.

While the action of the defendants on August 5, 1942, in shutting off all conveniences, including electricity, from the use of the tenants following a notice to vacate given by them on July 29, 1942, thus leaving the entire family without any light or refrigeration may seem precipitate, nevertheless the attitude of the plaintiff with respect thereto, to say the least was confusing and in a sense contributed to the hardship imposed on the tenants. This by reason of the fact that the plaintiff's own witness, Mrs. DeJong, testified that on July 7, 1942, she went to the Office of Price Administration to make complaint, and there was advised to return to the apartment and make tender to the defendants the sum of eight and 75/100 Dollars ($8.75) per week rental and no more. The testimony further shows that on July 9, two days later, John E. Mulder, Chief Rent Attorney, for the Office of Price Administration, wrote to the defendant, Mary Gandy, inter alia: "the maximum rental which you are allowed to charge for this premises is Twelve Dollars ($12.00) a week". It is a bit difficult to understand how the office of the plaintiff should advise the tenants to pay only eight and 75/100 Dollars ($8.75) as the maximum rental and yet a few days later in writing advise the defendants, the landlords, that the maximum rental should be twelve dollars ($12.00) per week. The only answer the plaintiff makes to this, is that on July 9th when the letter was written they had not the full facts in their possession concerning the previous tenancy of Mr. Harding, yet it is significant that at that time they advised her to pay only eight and 75/100 Dollars ($8.75) per week, the exact rental which Mr. Harding had been paying. It is not at all unlikely that it was on the strength of the plaintiff's letter, that the defendants maintained the attitude they did, and the situation not being clarified, the services were disconnected on August 5th, with the present resulting litigation.

■ However, the purpose here sought to be accomplished seems to me not to be in keeping with the broad objectives sought to be attained by the Act, nor in harmony with the remedy for housing ills in the present crisis. While it is requisite in a great national emergency such as confronts us by reason of the present war, that courts should be extremely hesitant in giving a narrow construction to legislation such as this, I am nevertheless constrained to deny the prayer of the plaintiff's bill. It seems to me a nuisance here exists not so much by reason of the acts of the DeJong children as in the fact that there are living in a storeroom with crude partitions separating one room from another within an area of twenty feet by twenty feet, a husband and wife, two boys, fourteen and six years of age respectively, and two girls, ten and five years of age respectively, together with a cat and a dog. This crowding of six lives

within four hundred square feet seems to me, not only unhealthy and unsafe, but is likewise unsanitary and offends against good morals. For a court of equity to give legal sanction to whatever the arrangement was, would be to defy the very spirit and purpose of the legislation, the plaintiff seeks to impose a duty under, for it was in a larger sense, the protection of the poor tenant from being the victim of high rents, which would force him, by virtue of his inability to pay such rents, into crowded living quarters, which prompted the enactment of the Emergency Price Control Act of 1942. To meet the full onset which the present emergency demands, whether it be in actual combat or on the home front, requires safe and sanitary living conditions, which are alone conducive to strong healthy bodies. The condition here existing is one which should not be long tolerated and accordingly in the exercise of the broad equitable powers inherent in a court of equity, I deem a nuisance to exist on the premises which should be abated; in pursuance thereof a maximum period of two weeks is given to the tenants, Mr. & Mrs. DeJong, to vacate, unless new quarters are sooner secured, the rental during the same to be eight and 75/100 dollars ($8.75) per week and existing services to be continued.

Let a decree be entered.